IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BERTA H.,[1]                                                    Case No. 6:19-cv-01300-SB

                Plaintiff,                                    **OPINION AND ORDER**

        v.

ANDREW M. SAUL, Commissioner of Social
Security,

                Defendant.

_____

**BECKERMAN, U.S. Magistrate Judge.**

      Berta H. ("Plaintiff") brings this appeal challenging the Commissioner of the Social

Security Administration's ("Commissioner") partial denial of her applications for Disability

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

of the Social Security Act. The Court has jurisdiction to hear Plaintiff's appeal pursuant to 42

U.S.C. § 405(g). For the reasons explained below, the Court reverses the Commissioner's

_____

     [1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party in this case. Where applicable, this opinion uses the same
designation for a non-governmental party's immediate family member.

PAGE 1 – OPINION AND ORDER

decision because it is based on harmful error and not supported by substantial evidence in the record.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or based on legal error.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

## I.    PLAINTIFF'S APPLICATIONS

Plaintiff was born in August 1964, making her forty-nine years old on December 30, 2013, the alleged disability onset date. (Tr. 36, 69.) Plaintiff has a high school education and past

work experience as a landscape laborer.[2] (Tr. 44, 57, 62, 262.) In her applications, Plaintiff

alleges disability due to depression, anxiety, fibromyalgia, panic attacks, and memory loss.

(Tr. 70.)

The Commissioner denied Plaintiff's applications initially and upon reconsideration, and

on August 2, 2018, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").

(Tr. 36.) Plaintiff and a vocational expert ("VE") appeared and testified at an administrative

hearing held on February 4, 2019. (Tr. 54-66.) On February 21, 2019, the ALJ issued a decision

partially denying Plaintiff's applications. (Tr. 36-46.) On June 12, 2019, the Appeals Council

denied Plaintiff's request for review, making the ALJ's written decision the final decision of the

Commissioner. (Tr. 1-8.) Plaintiff now seeks judicial review of the ALJ's decision. (Compl. at 1-

2.)

## II.     THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment

which . . . has lasted or can be expected to last for a continuous period of not less than 12

months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential

process for determining whether an applicant is disabled within the meaning of the Social

Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five

steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the

claimant has a severe impairment; (3) whether the impairment meets or equals a listed

impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the

---

[2] Plaintiff immigrated to the United States in 1995 as a refugee from Cuba. (Tr. 767, 824, 858, 954.)

claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari,* 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.* at 954. The Commissioner bears the burden of proof at step five of the analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett,* 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante,* 262 F.3d at 954.

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 36-46.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 30, 2013, the alleged disability onset date. (Tr. 39.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "Fibromyalgia; Diverticulitis; Degenerative Disc Disease (DDD) of the Lumbar Spine; Migraines; Post Traumatic Stress Disorder (PTSD); Depressive Disorder; and Somatic Symptoms Disorder[.]" (Tr. 39.) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or equals a listed impairment. (Tr. 39.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform "light work," subject to these limitations: (1) Plaintiff can frequently stoop, crouch, crawl, and climb ramps and stairs; (2) Plaintiff can occasionally climb ladders, ropes, or scaffolds; (3) Plaintiff can frequently "reach[] in all directions bilaterally"; (4) Plaintiff can frequently "handl[e], finger[] and feel[] bilaterally"; (5) Plaintiff needs to be "limited to understanding and carrying out simple instructions"; and (6)

PAGE 4 – OPINION AND ORDER

Plaintiff can engage in "no more than occasional contact with the public and co-workers." (Tr. 40.)

At step four, the ALJ concluded that Plaintiff could not perform her past relevant work as a landscape laborer. (Tr. 44.) At step five, the ALJ concluded that Plaintiff was not disabled before February 15, 2019 (i.e., the date Plaintiff's age category changed to an individual of advanced age, and she became disabled "by direct application of Medical-Vocational Rule 202.04") because a significant number of jobs existed in the national economy that she could perform, including work as a garment sorter, basket filler, and electrical accessories assembler. (Tr. 44-45.)

## DISCUSSION

Plaintiff's only argument on appeal is that the ALJ erred by finding that she was "capable of communicating in English." (Pl.'s Opening Br. at 4.) Plaintiff argues that this error was harmful because if she cannot communicate in English, Rule 202.09 of the Medical-Vocational Guidelines would "appl[y] instead" of Rule 202.04 and "lead[] to a finding that [she] is disabled as of the date that she became an individual closely approaching advanced age."[3] (Pl's Opening Br. at 5.)

## I.    APPLICABLE LAW

"'The ability to communicate is an important skill to be considered when determining what jobs are available to a claimant [in the local and national economy].'" *Rodriguez v. Colvin*, No. 3:13-cv-00390-SI, 2014 WL 2013408, at *4 (D. Or. May 9, 2014) (quoting *Pinto v.*

---

[3] Plaintiff was an "individual closely approaching advanced age" (i.e., fifty to fifty-four years old) prior to the established disability onset date of February 15, 2019. (Tr. 44; *see also* Tr. 69, reflecting that Plaintiff turned fifty in August 2014, about eight months after her alleged onset date). "Rule 202.09 . . . provides that an individual who is 'closely approaching advanced age'—that is, age fifty to fifty-four—is disabled if she is 'illiterate or unable to communicate in English.'" *Caudill v. Comm'r of Soc. Sec.*, 424 F. App'x 510, 514 (6th Cir. 2011) (citation omitted).

*Massanari*, 249 F.3d 840, 846 (9th Cir. 2001)). "Because literacy, or education level, is relevant to the inquiry of a claimant's ability to engage in substantial gainful activity and not to the existence of a disability, on which the claimant bears the burden of proof, the Commissioner bears the burden of establishing this factor." *Id.* (citing *Silveira v. Apfel*, 204 F.3d 1257, 1261 (9th Cir. 2000)).

## II.   ANALYSIS

Plaintiff argues that the Commissioner did not meet his burden of proof here because the ALJ failed to "explain why Plaintiff was capable of communicating in English," or cite any evidence supporting the finding that Plaintiff could do so. (Pl.'s Reply Br. at 2-3.) Plaintiff also argues that although the Commissioner cites record evidence that "support[s] the ALJ's finding that Plaintiff was capable of communicating in English," the ALJ did not cite any of this evidence and thus the Commissioner is impermissibly engaging in *post hoc* rationalization. (*Id.*)

It is well settled that federal courts must "'review [an] ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.'" *Peterson v. Colvin*, 668 F. App'x 278, 279 (9th Cir. 2016) (quoting *Bray*, 554 F.3d at 1225). For example, in *Mkhitaryan v. Astrue*, No. 09-cv-6971-SH, 2010 WL 1752162, at *4 (C.D. Cal. Apr. 27, 2010), as here, the claimant argued that the ALJ failed adequately to explain his finding that the claimant was able to communicate in English, and failed to cite "substantial evidence" in support of his finding that the claimant could do so. *Id.* The district court held that the ALJ erred by summarily concluding that the claimant could communicate in English without giving any explanation or citing any supporting evidence:

> Plaintiff, an Armenian native, has consistently maintained
> that she is unable to communicate in English. . . . Plaintiff required
> the assistance of an interpreter to give testimony at the ALJ

hearing, . . . and the ALJ included plaintiff's lack of English skills
in three hypotheticals posed to the VE[.] . . . However, the ALJ
summarily concluded that plaintiff is able to communicate in
English ('the language finding'). . . . In making this language
finding, the ALJ provided no explanation for rejecting evidence
that plaintiff was unable to communicate in English. *While there
may be sufficient support for the ALJ's language finding in the
record, the ALJ failed to reference any such evidence. As a result,
this Court is unable to review the ALJ's basis for the language
finding. The ALJ therefore erred.*

*Id.* (emphasis added) (internal citations and footnote omitted).

Similar to *Mkhitaryan*, the ALJ here summarily concluded that Plaintiff is "able to

communicate in English," but failed to explain why she reached that conclusion and failed to cite

any supporting evidence. (*See* Tr. 44, concluding that Plaintiff is "able to communicate in

English" but not providing any substantive analysis or supporting evidence and not addressing

conflicting or ambiguous record evidence). The ALJ's failure to explain her language finding is

significant for several reasons.

First, if Plaintiff is unable to communicate in English, Rule 202.09 requires a finding of

disability. *See Caudill*, 424 F. App'x at 514 ("Rule 202.09 . . . provides that an individual who is

'closely approaching advanced age' . . . is disabled if she is . . . 'unable to communicate in

English.'") (citation omitted).

Second, there is conflicting record evidence regarding Plaintiff's ability to communicate

in English. There is some evidence suggesting that Plaintiff can speak some English. (*See*

Tr. 825, 837, 863, Plaintiff reported that she "'speak[s] Spanish and English [but] would prefer a

Spanish speak[ing] case manager and team[] members,'" and as a result, Plaintiff received

"interpreter services in Spanish"; Tr. 873, Plaintiff's provider noted that Plaintiff "describes her

culture as speaking both Spanish and English"; Tr. 954, Plaintiff reported that she "took English

classes" when she moved to the United States when she was thirty and her husband "made fun of

her English"). However, there is also evidence suggesting that Plaintiff cannot adequately communicate in English. (*See* Tr. 54, the ALJ "appoint[ed]" an interpreter to translate for Plaintiff during the hearing; Tr. 898, Plaintiff presented for a consultative musculoskeletal examination and utilized a Spanish language interpreter "supplied by" Disability Determination Services ("DDS"); Tr. 891, DDS referred Plaintiff for evaluation and Plaintiff "presented accompanied with a Spanish language interpreter"; Tr. 1013, Plaintiff "initially declined an interpreter, but agreed to allow [a] bilingual [office assistant translate] after attempting to communicate in English with difficulty"; Tr. 791, Plaintiff's progress note referred to her as a "Spanish speaker" and noted that an individual "translated for [Plaintiff's] provider from Spanish to English to communicate with [her] efficiently"; Tr. 310, Plaintiff's counsel requested a translator because she was "concerned [Plaintiff] may misunderstand some of the issues in her case if no translator is available"; Tr. 395, Plaintiff presented to her appointment with "her son who translates Spanish"; Tr. 534, Plaintiff "called her husband to the phone to translate" and provided responses after her "husband asked her in Spanish"; Tr. 747, "Patient is primarily Spanish speaking and [case management] is translating"; Tr. 548, Plaintiff's provider asked someone "to translate and ensure understanding with medication"; Tr. 729, 793-95, 797-98, 951, Plaintiff used a translator; Tr. 222, Plaintiff reported that she does not speak, read, or write in English and that her preferred language is Spanish; Tr. 260, Plaintiff answered "No" when asked if she can "speak and understand English," "read and understand English," and "write more than [her own] name in English," and Plaintiff listed Spanish as her preferred language). The ALJ did not address, nor attempt to resolve, this conflicting evidence. (Tr. 40-44.)

///

///

Third, the ALJ did not provide any reason as to why she disagreed with the state agency medical consultants' opinions that Plaintiff "is illiterate or unable to communicate in English." (Tr. 82, 97.)

Fourth and finally, the ALJ's failure to explain her language finding is significant because none of the hypothetical questions the ALJ and counsel posed to the VE addressed what impact, if any, Plaintiff's ability or inability to communicate in English would have on her ability to perform the jobs that the ALJ identified as suitable for an individual with Plaintiff's RFC. (*See* Tr. 63-66.)

The Commissioner argues that even if the ALJ erred by failing to explain her language finding, any error was harmless because (1) the "three occupations that the ALJ found Plaintiff could perform each have a Specific Vocational Preparation level of 2 and are thus unskilled positions," and (2) the Dictionary of Occupational Titles states that the ability to communicate in English has the "least significance" in unskilled positions because they mostly involve working with "[t]hings," not "[p]eople." (Def.'s Br. at 6) (citation, quotation marks, and footnote omitted).

The Court is not persuaded by the Commissioner's argument. Even if the ability to communicate in English has the "least significance" in unskilled jobs, that does not mean that an inability to communicate in English would have no impact on Plaintiff's ability to perform the unskilled jobs the ALJ identified as suitable for her. Unfortunately, the VE did not address any hypothetical questions about the impact Plaintiff's ability or inability to communicate in English would have on her ability to perform these jobs. Thus, the record is not adequately developed.

Further, the ALJ's failure to explain her language finding and address conflicting and/or ambiguous evidence regarding Plaintiff's ability to communicate in English was harmful

because, as explained above, if Plaintiff cannot communicate in English, Rule 202.09 requires a finding that she is disabled.

It is also noteworthy that under similar circumstances, the *Mkhitaryan* court rejected a harmless error argument similar to the one the Commissioner advances here. *See Mkhitaryan*, 2010 WL 1752162, at *4 ("[W]hile English proficiency may be a less significant factor in the bulk of unskilled work, the fact that the Food Service Worker and Assembler jobs are listed as requiring language level 2 instead of language level 1 suggests that these two jobs may be in the minority of unskilled jobs that require greater language proficiency, even if they are largely object-oriented."). Similar to *Mkhitaryan*, the ALJ here determined that Plaintiff could work as a garment sorter, electrical accessories assembler, and basket filler. (Tr. 44-45.) These unskilled jobs, however, require at least an "ability to read and understand the meaning of 2,500 words and speak simple, grammatically correct sentences." *See Linares v. Colvin*, No. 14-cv-3524, 2014 WL 5528404, at *5 (C.D. Cal. Oct. 31, 2014) ("[T]he occupation of garment sorter, which is at the DOT's *lowest* Language Development level, still requires, in part, the ability to read and understand the meaning of 2,500 words and speak simple, grammatically correct sentences."); *see also Turner v. Berryhill*, No. 1:17-cv-00022, 2018 WL 1413050, at *4 (E.D. Cal. Mar. 21, 2018) ("[A]n assembler of electrical accessories . . . [is] classified as a Language Level 2, which requires a reading rate of 190-215 words per minute."); *Mosqueda v. Astrue*, No. 11-cv-8462, 2012 WL 3155580, at *3 (C.D. Cal. Aug. 3, 2012) ("Because Plaintiff is illiterate, the ALJ clearly erred in finding that she could perform the electrical-accessories-assembler job, which requires Language Level 2 skills. . . . Language Level 2 encompasses the following skills: . . . Write compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs. . . . Speak clearly and distinctly with appropriate pauses

and emphasis, correct punctuation, variations in word order, using present, perfect, and future tenses.").

Given the ALJ's unexplained findings and unresolved conflicts and ambiguities, the Court exercises its discretion to remand Plaintiff's case for further administrative proceedings. *See Bradshaw v. Colvin*, 642 F. App'x 677, 678 (9th Cir. 2016) ("Because we conclude that the ALJ failed to adequately explain why he rejected certain [record] evidence, and that the error was not harmless, we vacate and [exercise our discretion to] remand for further proceedings."); *see also Brandon v. Saul*, 821 F. App'x 857, 858 (9th Cir. 2020) (explaining that it is appropriate for a district court to remand a case for further proceedings where there are unresolved conflicts or ambiguities "between the erroneously rejected [evidence] and other record evidence").

## CONCLUSION

For the reasons stated, the Court REVERSES the Commissioner's decision and REMANDS this case for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

DATED this 9th day of November, 2020.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge